Joseph F. CALLAHAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 485 S 161 PS.

Supreme Court of Indiana.

Sept. 6, 1988.

Joseph F. Callahan, Pendleton, pro se.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of fifty (50) years, and a second count of Murder, for which he received a sentence of fifty (50) years, his sentences to be served consecutively.

At about noon on March 15, 1982, Pauline Vandivier called the minister of her church and told him that someone had tried to steal her automobile from her home in rural Johnson County. At approximately the same time, a neighbor saw Pauline's husband Harold driving toward their home.

Shortly before 1:30 p.m. on March 15 another neighbor drove past the Vandivier farm on her way to church. She saw the Vandivier's two cars and a third light-colored car in the driveway and assumed the Vandiviers were having company.

Later that afternoon a salesman visited the Vandivier home and noticed that both

of their cars were on the property. When he knocked on the screen door, he saw that the inside door was ajar and a window screen had a hole in it. No one answered the door so he left.

Three days later another neighbor noticed that newspapers had accumulated in the Vandivier's mailbox and, thinking they may be sick, she knocked on the door. When she received no answer, she entered the house to find Pauline Vandivier dead on the living room floor.

Police found Harold Vandivier's body in the office of the home. He had died from a gunshot wound to his head. The Johnson County coroner testified that Harold's arms had stiffened behind him as though he were bound by handcuffs at the time of his death and then the handcuffs removed several hours later.

Pauline Vandivier was found with an athletic sock tied tightly around her neck. The cause of her death was strangulation.

On March 31, 1982, police were surveying the area near the Vandivier home during their investigation. They stopped at appellant's home, which was near the Vandivier farm, because a light-colored car was parked in the driveway which possibly could have been the one seen by the neighbor in the Vandivier's driveway.

As they pulled into the driveway, appellant, who was seventeen at the time, came out of the house. He told police that he owned the car and they all went inside the house and talked with appellant's parents. Appellant's father told police that they owned several guns. Because a 9 millimeter shell casing was found at the scene of the crime, police asked whether they owned a 9 millimeter pistol. Appellant's father said they did and asked police to wait outside while he located the gun.

While police were outside, appellant told his father the gun was under his bed. Appellant's father told police the gun was not in its usual hiding place but was under appellant's bed instead. He complied with the police's request to fire the gun outside so they could compare the shell casings with the one found in the victims' home.

An analysis of the shell casings revealed that the gun found under appellant's bed fired the shell casing found at the scene of the murders.

When police asked appellant of his whereabouts on March 15, he said he had ridden the bus to school but had skipped school and gone shopping at the Greenwood Mall, then had gone four-wheeling with a friend named Brad Lawson.

Brad Lawson testified that on April 1, 1982 appellant called him and said that police were trying to get him for the Vandivier murders. Later he asked Lawson to tell police that he was at Greenwood Mall with him on the day of the murders. He gave Lawson $60, and Lawson agreed to report the alibi.

Appellant's school bus driver testified that appellant called him the night of March 14 and told him he would not be riding the bus the next day, and he did not. School records indicated that appellant was not in school on March 15, but Lawson was.

Evidence was introduced at trial which showed that appellant's family lived modestly with little cash available while Harold Vandivier commonly carried several hundred dollars on his person. On the afternoon of the murders, appellant paid cash for approximately $200 worth of new tools in addition to a watch, a calculator, and a tape recorder.

During a search of appellant's home, police collected the 9 millimeter pistol, ammunition, a set of handcuffs, and handcuff keys.

In his *pro se* appeal, appellant argues that fundamental error occurred when the prosecutor commented on his right to not testify. The first instance appellant cites occurred during final argument, when the prosecutor said,

"Have we ever really found out or any explanation where Joey was that morning. Let's see, has there been any witnesses presented who have told us where Joey was that morning?"

At that point, appellant moved for a mistrial. The trial court stated that it did not follow from the prosecutor's comment that

a statement was made about appellant's failure to testify, and his motion was denied.

A remark about the lack of an explanation by the defense concerning otherwise incriminating evidence against the accused is proper, so long as the State focuses on the absence of evidence to contradict the State's evidence and not the accused's failure to testify. *Didio v. State* (1984), Ind., 471 N.E.2d 1117. We find no error in the denial of appellant's motion for mistrial.

Appellant makes the same complaint about the prosecutor's comment made after appellant objected to a policeman's testimony about his conversation with appellant's father. The conversation occurred during the test shooting, and the only persons present beside police were appellant and his father.

The prosecutor argued that the witness should be allowed to report the conversation over appellant's hearsay objection because it occurred in appellant's presence, and he could refute anything which was incorrect. He further stated it was not hearsay because it could be challenged on cross-examination, and both appellant and his father were considered as hostile witnesses, thus the State could not obtain cooperation and testimony from them. Appellant asserts that these comments violated his Fifth Amendment right to remain silent.

We first note that appellant failed to object to the prosecutor's comment on the ground asserted on appeal, and therefore the issue is waived unless fundamental error occurred. Fundamental error is error that if not corrected, would deny defendant fundamental due process. *Id.;* *Burkes v. State* (1983), Ind., 445 N.E.2d 983.

We cannot agree with appellant that the prosecutor's comments can be interpreted as a remark about his failure to testify. The prosecutor was simply attempting to challenge the hearsay objection by explaining that appellant could produce evidence to contradict the officer's testimony, and the State could call only the police officers to testify about the test shooting because the other persons present were hostile witnesses.

Because the comments cannot be construed as an attack on appellant's failure to testify on his own behalf, we find no fundamental error.

Appellant argues the trial court erred by allowing the State to impeach its own witnesses by evidence of family character which was irrelevant and prejudicial. He contends the State was erroneously allowed to question appellant's family about their gun collection and "survivalist" beliefs in an attempt to taint appellant's character.

Appellant made no objection to the questioning concerning the gun collection, thus the issue is waived for purposes of appeal. *Wood v. State* (1987), Ind., 512 N.E.2d 1094.

Further, any evidence tending to prove a material fact is admissible even though its tendency in that direction may be slight. All circumstances relative to or tending to shed light on the intent or motive of the defendant or tending fairly to explain his actions are admissible even though they occurred prior to the crime. *Bertram v. State* (1978), 268 Ind. 368, 375 N.E.2d 1098. The trial court is vested with wide latitude to determine the probative value of evidence. *Brown v. State* (1985), Ind., 480 N.E.2d 938.

In appellant's case, the testimony about the gun collection and appellant's marksmanship could tend to prove the accessibility of guns to him and his skill in their use. Also, appellant's mother testified that the gun collection was for investment purposes and she was questioned as to their profitability. At issue was the Callahan family income, which helped to determine whether they could have provided the funds for appellant's shopping spree on the afternoon of the murders. We find that the probative value of the evidence was not outweighed by the possible prejudice of its admission.

Appellant argues that his motion to suppress his statement should have been granted because police failed to give him an opportunity to consult with his parents before the statement was given.

On April 2, 1982, appellant's father brought him to the Johnson County Law Enforcement Facility for the purpose of being interviewed. Police advised appellant of his *Miranda* rights, but he was not arrested. Appellant's father told him to cooperate with police so the matter would be resolved. Appellant then told police that on March 15 he rode the bus to school, then went to Greenwood Mall and four-wheeling with Brad Lawson.

Appellant contends the lack of meaningful consultation with his father before he gave his statement rendered it inadmissible.

Indiana Code § 31–6–7–3 states, in part,

"Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

.    .    .    .    .

(2) by the child's custodial parent, guardian, custodian or guardian ad litem if:

.    .    .    .    .

(C) meaningful consultation has occurred between that person and the child;
. . . ."

■ The "meaningful consultation" requirement may be satisfied by either actual consultation of a meaningful nature or by the express opportunity for such consultation, which is forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his constitutional rights. The State bears the burden of proving the requirement of meaningful consultation or that the opportunity therefor has been satisfied. *Williams v. State* (1982), Ind., 433 N.E.2d 769.

■ When appellant gave his statement to police, he provided only exculpatory information. Though appellant should have been given an opportunity to discuss with his father the waiver of his *Miranda* rights under Ind.Code § 31–6–7–3, the lack of that opportunity was harmless error in appellant's case because he made no inculpatory statement or confession during the interview.

Appellant contends the trial court erred by denying him an evidentiary hearing concerning certain issues raised in his belated motion to correct error.

■ There is no authority requiring an evidentiary hearing on a motion to correct error. *Harris v. State* (1981), Ind., 427 N.E.2d 658. Appellant filed affidavits and offers to prove in support of his motion for evidentiary hearing. The filing of affidavits pursuant to Ind.R.Tr.P. 59 avails the movant the opportunity to bring facts dehors the record before the court. *Bennett v. State* (1984), Ind., 470 N.E.2d 1344. We find no error in the trial court's denial of appellant's motions for evidentiary hearing.

Appellant claims his Sixth Amendment right to effective assistance of counsel was violated and he cites thirteen reasons in support of his allegation.

Appellant first claims his counsel was ineffective because he failed to follow the procedure mandated by Ind.R.Cr.P. 12 in filing a motion for change of venue on the basis of pretrial publicity.

■ Appellant must overcome with strong and convincing evidence the presumption of his counsel's competency. *Stewart v. State* (1988), Ind., 517 N.E.2d 1230. This Court will not speculate about what may have been the most advantageous strategy in a particular case. Isolated poor strategy, inexperience, or bad tactics do not necessarily establish ineffective assistance of counsel. *Grigsby v. State* (1987), Ind., 503 N.E.2d 394. Appellant must prove that he was prejudiced by showing that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Geary v. State* (1986), Ind., 497 N.E.2d 228.

In appellant's case, the record indicates that the trial court heard extensive argument on the motion for change of venue and the pretrial publicity. To determine

whether appellant's case could be heard by a fair and impartial jury in Johnson County, the court asked each prospective juror during *voir dire* whether he or she had encountered pretrial publicity and had been affected therefrom. Those prospective jurors who felt, for a variety of reasons, that they could not be impartial were excused.

■ Because appellant's motion for change of venue was heard on its merits, appellant has failed to show prejudice from his trial counsel's failure to correctly file the motion. Because he has shown no prejudice, we cannot find that his counsel was ineffective. *Id.*

■ Appellant claims his counsel was ineffective because he failed to call an independent expert witness to testify about whether the shell casing found in the victims' home was fired from the gun under appellant's bed.

Appellant provides two reasons why his trial counsel failed to provide an independent expert witness. He reasons that because trial counsel was being paid by his parents, he was possibly reluctant to pursue a line of investigation and defense which implicated other members of appellant's family, or that his counsel's decision to cross-examine the State's expert to show that the bullet casing did not match was an uninformed choice. Appellant concludes that his trial counsel failed to establish a reasonable doubt as to the identity of the murder weapon.

One can only speculate whether a further attempt to contradict the police ballistics expert's conclusion would have been advantageous or even possible. We cannot find that, but for the lack of expert witness, the outcome of appellant's trial would have been different. *Id.*

■ Appellant argues that his counsel was ineffective because he failed to interview a crucial prosecution witness, Richard Harold. Harold, an inmate of the Johnson County Jail with appellant, testified that appellant said he was having dreams of strangling a lady with a sock, and he had tears in his eyes. Appellant believes that an earlier interview of Harold by his coun-

sel would have enabled him to better cross-examine Harold and rebut his testimony.

Again, appellant's argument is mere speculation and he provides no evidence which shows that his counsel could have impeached or refuted Harold's testimony. We find no error. *Id.*

■ Appellant contends his counsel was ineffective because he failed to object to testimony about his family life. Appellant's mother, father, and brother were asked several questions about the numerous loaded guns they kept throughout their house. Appellant asserts that the testimony was irrelevant and its purpose was to create the perception that his family was peculiar. He concludes that his counsel was ineffective in failing to object to the prejudicial testimony.

The testimony of appellant's family members explained that they are gun enthusiasts, all are good marksmen, and loaded guns were stored in, under, and around their beds. Trial counsel may have decided that the testimony concerning the gun collection could help his client, in that it explained why a 17–year–old had a gun under his bed, and it could have created a question as to which family member shot the victim. We will not second-guess trial counsel's strategy. *Grigsby, supra.*

■ Appellant asserts his trial counsel was inadequate because he conducted a weak, cursory cross-examination of a witness who testified that she saw a light-colored car in the victims' driveway. Appellant believes that because the witness's testimony placed someone at the home when the murders could have occurred, at a time when evidence placed appellant elsewhere, trial counsel should have concentrated on the point more emphatically.

We can only speculate whether further concentration on the light-colored car could have helped or hurt appellant's position, considering that police made an initial inquiry at appellant's home because of the light-colored car parked there. Such speculation cannot lead to a reversal. *Id.*

Appellant makes the following brief statements in support of his assertion that his counsel was inadequate:

1. His counsel failed to call the witnesses who saw appellant while they were working at a White Castle and Sears around noon during the week of the murders. Because the witnesses could not remember which day they saw him, their testimony would have been of little value; thus he suffered no prejudice from their absence.

2. His counsel would have failed to file the motion for change of venue if appellant's father had not insisted that he do so. Because the motion was reviewed on its merits, appellant suffered no prejudice from the delay in filing it.

3. His counsel failed to request that a record be made of the hearing on final instructions. However, appellant fails to allege any error regarding a final instruction; thus he has shown no prejudice.

4. His counsel failed to appear at the presentence investigation interview, nor did he present witnesses requested by appellant at the sentencing hearing. Again, appellant fails to assert any harm from these alleged errors.

5. His counsel failed to introduce into evidence a throw rug marked with a footprint or evidence to confirm his mother's testimony relating to bank account withdrawals. Appellant's bare assertion fails to establish the harm he suffered from the alleged errors.

6. His counsel failed to move to suppress the shell casings obtained from the test shooting at the Callahan residence when the casings were taken without a search warrant and police failed to give the Callahans their *Miranda* warnings. Because the shell casings were obtained with the Callahans' consent, a search warrant was not necessary. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365. Further, *Miranda* warnings do not need to be given when the person questioned has not been placed in custody. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128. We find no error.

7. His counsel failed to object or move for a mistrial when a non-witness member of the audience in the courtroom stated loudly, "Joey said he did it." He then was removed from the courtroom. Appellant does not cite us to any portion of the record which may report the disturbance. The State does cite the page of appellant's affidavit in which he states that David Smith entered the court in violation of the separation of witness order, uttered a statement within earshot of the jury, and then was removed.

We cannot base a finding of ineffective assistance of counsel on appellant's assertion of the content of the utterance. Because we have no basis for finding that the jury in fact heard the utterance or the failure of his attorney to object was prejudicial error to his case, we find no basis for ineffective assistance of counsel.

8. His counsel failed to exercise all peremptory challenges during *voir dire;* thus he waived error as to the denial of his motion for change of venue. We agree with the State's position that it would be unreasonable for counsel to waste peremptory challenges by exercising them on jurors he finds acceptable only to preserve error on the denial of a motion for change of venue, because he risks the possibility of facing unacceptable prospective jurors with no peremptory challenges remaining.

We do not find that under the standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 appellant was denied effective assistance of counsel.

Appellant argues the trial court erred in admitting videotapes of the victims into evidence. He argues that no foundation was laid for their admission, no evidence of chain of custody was presented, and no testimony was given about the depictions in the tape.

When the videotape was offered into evidence, appellant objected to its admission on the ground that because he had stipulated as to the victims' cause of death, it was irrelevant and offered to inflame the passions of the jury. Appellant cannot

now present an allegation of error which was not presented to the trial court. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

Appellant claims that the State failed to give him the statements given before a grand jury and used by the State to impeach the witnesses. He contends he had a right to receive such impeachment material on discovery prior to trial.

 Appellant does not cite us to the portion of the thirteen-volume record in which he objected to the witnesses' testimony on the basis that the State failed to furnish the prior inconsistent statements. It is the responsibility of the defendant to support his contentions with appropriate citations to the record as well as legal authorities. Without such assistance, we cannot determine the merits of his claim and will consider it waived. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78.

Appellant argues the trial court committed fundamental error by considering erroneous criteria in his sentencing. He contends the trial court improperly used his inactive probation as an aggravating factor, and the aggravating factors supporting an increased sentence were not sufficiently stated.

In sentencing appellant, the trial court stated that the aggravating circumstances were the age of the victims, the fact that defendant was on inactive probation at the time of the crime, and that any other sentence would depreciate the seriousness of the crime.

When the trial court imposes aggravated or consecutive sentences, it may consider the aggravating circumstances listed in Ind.Code § 35–38–1–7(b) or any other aggravating circumstances. The court is not limited to the factors listed in the statute. *May v. State* (1986), Ind., 502 N.E.2d 96; *White v. State* (1986), Ind., 495 N.E.2d 725. We find the trial court's statement sufficiently supports the imposition of an aggravated sentence.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.