Keith Lamont PATTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9007–CR–00475.

Supreme Court of Indiana.

March 16, 1992.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Keith Lamont Patton initially pled guilty to the murder of Michael Pack, as well as to rape and a host of other charges. He was sentenced to death and 132 years in prison.

We reversed his murder conviction and death penalty and remanded the murder cause for trial. He continued to serve the 132–year sentence. *Patton v. State* (1987), Ind., 517 N.E.2d 374. The jury then found Patton guilty of murder, but recommended against imposition of the death penalty. Patton was sentenced to sixty years in prison to be served concurrently with a thirty-year sentence for rape and consecutive to his 132–year sentence in a related action. Patton now appeals his murder conviction.

Patton raises one issue for our review: whether the trial court erred in denying his motion to suppress the statement he gave to Indianapolis police. Specifically, he maintains his waiver of rights was not made voluntarily and intelligently because he was not given the opportunity for meaningful consultation with his mother prior to making the statement.

The facts surrounding Patton's confession are as follows. Patton, seventeen years old, was arrested on October 27, 1983, for offenses which had occurred during two separate but related incidents. The first incident was an armed robbery; the second was Michael Pack's murder and the brutal rape of Pack's companion. The police went to Patton's home and brought both Patton and his mother to the police station. Detective Larkins first talked to the pair about an armed robbery Patton had committed. He explained to Patton and his mother the procedures for talking to a juvenile, explained the waiver of rights necessary for the conversation with police to proceed, and left Patton and his mother alone to discuss what they were going to do. Detective Larkins left the waiver of rights form with Patton and his mother. They talked for about fifteen or twenty minutes, then knocked on the door to signal that they were ready to talk. Patton and his mother signed a form acknowledging they were waiving Patton's rights, and Patton gave a statement to Detective Larkins. At the beginning of the statement, the detective again advised Patton of his rights. During Detective Larkins' time with Patton and his mother, they did not ask to consult with anyone else.[1]

After Detective Larkins concluded questioning Patton, Detectives Crooke and Hoke talked with Patton and his mother.[2] The officers said they wanted to talk to Patton about a murder at Washington Park, advised Patton of his rights again, and left Patton and his mother alone. The detectives could not remember whether they left the waiver of rights form with Patton and his mother while they were consulting; Patton maintains they did not. Approximately twenty or thirty minutes later, Patton's mother knocked on the door to indicate they had finished their discussions.[3] Patton's mother said he wished to give a statement, and all she requested was that he tell the truth. Patton and his mother completed another waiver of rights form, and Patton gave a statement to the detectives about the murder. The beginning of this statement contains yet another advisement of rights to Patton and his mother. Patton stated he understood his rights, and still wished to make a statement. Despite the contrary assertions of Patton and his mother, the detectives said neither of them asked to consult with other family members.[4] Patton's mother was with him from the time of his arrest through the completion of both statements.

The U.S. Supreme Court has emphasized that "admissions and confessions of juveniles require special caution." *In re Gault*, 387 U.S. 1, 45, 87 S.Ct. 1428, 1453, 18 L.Ed.2d 527 (1967). In 1972, this Court held that a juvenile's statement or confession could not be used against him unless both he and his parents or guardian were informed of his rights to an attorney and to remain silent. *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138. Further, "the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights." *Id.*, 259 Ind. at 439, 288 N.E.2d at 142. The legislature codified *Lewis* in 1979. Indiana Code § 31-6-7-3 (West 1979) provides that a child's parent, guardian, custodian or guardian ad litem may waive any rights guaranteed to the child, provided: that person knowingly and voluntarily waives the rights; that person has no interest adverse to the child; meaningful con-

---

1. Patton has not challenged the convictions resulting from this incident, and thus does not make any challenges to this statement.

2. There is some evidence indicating that Larkins may have re-entered the room after Crooke and Hoke began talking with Patton.

3. Both Patton and his mother now say they engaged in only minimal conversation during their time alone. Of course, only Patton and his mother could control the course of their conver-

sation. The detectives had no control over Patton's use of the opportunity to consult, and were in no position to even recommend how Patton and his mother should spend their time together. *See Whipple v. State* (1988), Ind., 523 N.E.2d 1363; *Buchanan v. State* (1978), 268 Ind. 503, 376 N.E.2d 1131.

4. Detective Hoke testified they did not request consultation with others; Detective Crooke did not recall either of them making such a request.

sultation has occurred between that person and the child; and the child knowingly and voluntarily joins with the waiver.

■ The consultation requirement is designed to afford the juvenile a stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his life. *Washington v. State* (1983), Ind., 456 N.E.2d 382. The requirement is satisfied if actual consultation occurs or if there is an express opportunity for consultation which is properly forsaken by the juvenile. *Callahan v. State* (1988), Ind., 527 N.E.2d 1133. "The State bears the burden of proving the requirement of meaningful consultation or that the opportunity therefor has been satisfied." *Id.* at 1138.

■ Patton argues he was deprived of meaningful consultation with his mother because Detectives Crooke and Hoke did not leave the waiver of rights form with him and his mother while they were discussing Patton's course of action. Both detectives testified they informed Patton of his rights before leaving Patton and his mother alone to talk. That the waiver of rights form was not left in front of them does not lead to the conclusion that they were unable to consult meaningfully with each other. What is important is that the child and adult be aware of and understand the child's rights in order to discuss them intelligently. There is no indication Patton and his mother were not aware of his rights, especially in light of the fact that this was the second time Patton had given a statement that evening and his rights had already been explained several times.

■ As previously indicated, both the adult and child must knowingly and voluntarily waive the child's rights. To determine whether a waiver of rights was knowingly and voluntarily made, the court considers all the circumstances of the waiver. Ind.Code § 31–6–7–3(d). Patton was seventeen years old at the time of the statement; his mother had been with him from the moment the police arrived at their home; there was no evidence of coercion, force, or inducement. Patton and his mother were repeatedly advised of his rights; Patton

and his mother had already been through the waiver process once that evening before making the statement at issue; and they did not appear confused or ask any questions about his rights. Patton and his mother voluntarily and intelligently waived his rights, and we see no error in the admission of his statement.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, DICKSON and KRAHULIK, JJ., concur.