Keating, J.
David Goldberg stands convicted of book-making (Penal Law, § 986) and possession of book-making records (§ 986-b), and Max Landesberg of possession of book-making records.31
A motion to suppress evidence seized by the arresting officer, Welsome, was denied. The principal issue on this appeal is whether the motion to suppress the evidence was properly denied.
The validity of the seizure depends upon the lawfulness of the arrest which, in turn, depends upon whether the police officer had probable cause to arrest the defendants (Code Crim. Pro., § 177).
At the hearing on the motion to suppress, Officer Welsome testified that he had been observing Goldberg, Landesberg and Somerfield for a period of about three months prior to the arrest. He knew Goldberg and Somerfield to be convicted bookmakers and he had been present during this period at the arrest of defendant Landesberg for book-making.
On the day of the arrest, Officer Welsome saw Somerfield and two other individuals, Becker and Katz, known to him to be convicted book-makers, enter an office building located at 110 West 34th Street. He followed them to the lobby, and they took the elevator to the seventh floor.[1]
[2]
*463 Groldberg later entered the same building and also took the elevator to the seventh floor.
Shortly thereafter, Landesberg also entered the building, but the officer did not notice to which floor he went.
At about noon, Somerfield, Katz and Becker left the building. Landesberg also left, but a couple of hours later, at 2:30 p.m., he returned to the building. The officer saw him enter room 711. Officer Welsome listened at the door and heard a telephone being dialed. Then a male voice said: “ Hello, who is this? ” (Pause) “Okay, Tommy for Marty; what do you have?” (Pause) “ Okay, that is Cold Date, in the ninth at Tropical, ten to win.”
The officer formed the opinion that the male voice in the room was accepting wagers on horse races. He did not recognize the voice but he knew that it did not belong to Landesberg.[3]
The officer then opened the mail slot and thus observed Groldberg sitting at a desk. Groldberg dialed a telephone number and wrote upon a piece of paper as he said: “Hello, Joe! What do you have? Joe for Pulton, in the ninth, at Tropical, ten and ten, and Biot Squad ’ ’.
The officer then heard the elevator stop. He ran to the men’s room, about eight feet away and observed Somerfield open the door to room 711. Prom behind him, the officer saw Groldberg sitting at a desk. While still in the hallway, the officer heard Somerfield say: ‘[1] How are we doing, boys; did you get tonight’s action or will I have to work hard again tonight? ”
The officer entered behind Somerfield, seized the evidence and arrested the defendants.
The question for our determination is whether Officer Welsome had reasonable grounds or probable cause for believing that a crime was being committed in his presence.
The defendants rely on our decision in People v. Caliente (12 N Y 2d 89 [1962]). We reversed four judgments of conviction on the ground that the arrests without warrants were unlawful, thus invalidating the searches pursuant thereto. We said at page 94: “ [T]he defendant was handed in addition to paper money, paper slips, the nature of which was completely unknown to the arresting officer. The mere act of accepting such money and pieces of paper, without more, does not constitute a crime.”
*464 In the instant case, the arresting officer, according to his testimony, had observed a great deal more than had the officer' in the Caliente case. He had observed five known book-makers enter the same office building and all had gone to the same floor. He observed one, Landesberg, enter room 711. He heard someone inside the room dial a telephone and accept what obviously to him was a wager on a horse race. Excluding what the officer saw by means of his trespass (looking through the mail slot)[4], he then observed Somerfield, another known book-maker, enter the office, commenting as above stated.
Moreover, he then observed Goldberg sitting at the telephone. All of this constituted, in our view, probable cause for Officer Welsome’s belief that a crime was being committed in his presence.[5]
The defendants contend that, since, prior to the police officer’s entry into the room, he did not know the identity of the person to be arrested, the arrest was invalid.
Officer Welsome testified that he knew that the voice on the telephone was not that of Landesberg. When Somerfield opened the door, the officer saw Goldberg sitting at a desk and he was on the telephone. From the officer’s testimony; considering all his observations, it was reasonable for him to conclude that it *465 was Goldberg whom he had heard taking the bets. This case, accordingly, is distinguishable from People v. Cognetta and Grecco (12 N Y 2d 89, 95) where the officer heard bets being taken in a room, but did not know whom he was going to arrest until he had climbed through the transom and observed the defendants. Since this case is distinguishable, we need not consider whether it is necessary for an officer arresting for a misdemeanor to observe the defendants before entering the premises.
The defendants also claim that, since Officer Welsome merely heard a voice accepting bets through a closed door, this was not in his presence.
Officer Welsome acted on the evidence he perceived by means of his own senses, without any artificial aids. He relied on his own sight and his hearing, and not on any information supplied to him. To limit the meaning of “ presence ” to observations perceived through one sense, sight, seems unsupportable.[6]
Finally, the defendants urge that they were deprived of their Fifth Amendment privilege against self incrimination. Officer Welsome seized sums of money from Goldberg and Landesberg and returned it to them only upon their signing receipts for it. These receipts were later introduced in evidence as exemplars of their handwriting.
Schmerber v. California (384 U. S. 757 [1966]) deals with the distinction between testimonial communication and physical communication. The defendant in this case was convicted of the misdemeanor of driving while intoxicated. While in the hospital, a blood sample had been taken from him, over his objection, for the purpose of showing intoxication.
The court noted (p. 764): “ [B]oth federal and state courts have usually held that it [the Fifth Amendment] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification in court, to stand, to assume a stance, to walk or to make a particular gesture. The distinction which has emerged * * *
is that the privilege is a bar against compelling ‘ communica *466 tions ’ or ‘ testimony ’, but that compulsion which makes a suspect or accused the source of ‘ real or physical evidence ’ does not violate it.”
The court went on to point out that certain tests designed to produce physical evidence, e.g., lie detector tests may elicit testimonial responses. This is certainly not such a case. Handwriting specimens, like fingerprints, are physical evidence.
The judgment should be affirmed.
Chief Judge Fuld and Judges Van Voorhis, Burke, Scileppi, Bergan and Breitel concur.
Judgment affirmed.

. A third defendant, Somerfield, was found not guilty after trial.

. This and what follows is contained in Officer Welsome’s testimony at the hearing on the motion to suppress.

. This testimony is significant in view of what happened subsequently.

. In People v. Perlman and Bernstein, one of the three eases decided with People v. Caliente (supra), the police officer's sole means of observing the identity of the defendants had been by looking through the mail slot, a trespass. Officer Welsome initially suspected the identities of the defendants, due to his many observations of them. Then he saw the inside of the room in a perfectly legitimate manner when Somerfield opened the door and was able to identify the occupants. This ease is likewise clearly distinguishable from People v. Santiago (13 N Y 2d 326) where the police officers gained admission into a residential building by forcing open a skylight, subsequently discovering contraband in an apartment. Officer Welsome was not a trespasser in the office building and he had probable cause for his arrest, excluding what he saw by means of his single, brief trespass.

. Section 177 of the Code of Criminal Procedure has been amended since our decision in People v. Caliente. In that case, we noted that, under section 177, as it read then: “The lawfulness of the arrest does not depend * * * upon a reasonable belief on [the officer’s] part that a crime has been committed.” (People v. Caliente, supra, p. 94.)
Section 177 now reads: “ A peace officer may, without a warrant, arrest a person, 1. For a crime committed or attempted in his presence, or where a police officer * * * has reasonable grounds for believing that a crime is being committed in his presence.”

. In Beck v. Ohio (379 U. S. 89, 94 [1934]) the court reversed the defendant’s conviction, noting that “ the record does not show that the officers 6 * " saw, heard, smelled, or otherwise perceived anything else to give them ground for the belief that the petitioner had acted or was then acting unlawfully.”