THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD BALONE, Appellant.

Fourth Department, May 21, 1976

*Nathaniel A. Barrell (Rosalie Stoll* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (Judith Manzella* of counsel), for respondent.

GOLDMAN J. The sole question in this appeal is whether the introduction into evidence of defendant's police fingerprint card was reversible error. In the circumstances here presented, we hold that it was. The card, which was offered in support of identification testimony by a police fingerprint expert, bore on one side a typical fingerprint chart, together with front and profile mug shots of the defendant. On the reverse side were the defendant's name, address, date and place of birth, and various other personal information. On one portion of the reverse side was a recital of defendant's criminal history, which included references to burglary and murder. The court ordered that portion masked with heavy paper, so that the jury could not see it and it was so masked. However, the caption, "Arrest Record", which appeared at the top of the partly-masked side, remained uncovered. Also left exposed was a small box, captioned "Bur. I.D.No.", containing a handwritten number which matched a number that appeared on a tag in the mug photos. One police witness indicated that the "Bur.I.D.No." was a "mug number", and said: "That number indicates a previous arrest".

The card was dated April 24, 1973; the subject crime had been committed on April 21, 1973. The proximity of dates, however, was wholly coincidental, for the card was actually prepared in connection with an unrelated crime which was committed *subsequent* to the subject crime, and for which appellant was arrested and fingerprinted on April 24, 1973. However, the jury was never told whether or not the card was prepared in connection with the offense being tried. The court instructed the prosecutor to caution his witnesses "not to volunteer for what [appellant] was arrested".

After admitting the card into evidence, over defense objection, the court advised the jury that "those portions which I felt were immaterial to this lawsuit I covered up with a piece

of cardboard, so that [the card] as it now exists and stands, is in evidence". The jurors were told that they would be allowed to view the card in the courtroom but not in the jury room, "due to the fact that parts of it were covered up".

Appellant contends that it was error to admit the fingerprint card into evidence because it implied to the jury that he had committed other crimes, although he did not take the stand or otherwise place his character in issue. Had the criminal history on the fingerprint card been left uncovered, there would of course be no question that it should not be used (People v Wiggins, 30 AD2d 948; People v Barile, 239 App Div 637; United States v Dressler, 112 F2d 972). But the People urge that prejudice was successfully avoided by the masking of the portion of the card that referred to other crimes. Of the four cases we have found that have discussed the soundness of this practice, one has unequivocally approved it (Moon v State, 22 Ariz 418), one has deemed it "not reversible error" (Lester v State 416 P2d 52 [Okla]), and two others, which on their facts are distinguishable from the case at bar, found it not prejudicial in the circumstances (State v Jackson, 284 NC 321 [introduction of fingerprint card not prejudicial error, although police witness testified that covered portion referred to prior offense, in light of positive voice identification by complainant]; State v Viola (51 Ohio L Abs 577, app dsmd 148 Ohio St 712, cert den 334 US 816 [not prejudicial error where defense counsel himself had volunteered some details of defendant's criminal history to jury]).

Authority is both more plentiful and more illuminating, however, on the cognate problem of police mug photographs which tend to imply prior criminal activity by the accused (see generally, Admissibility, and prejudicial effect of admission of "mug shot", "rogues' gallery" photograph, or photograph taken in prison, of defendant in criminal trial, Ann 30 ALR3d 908, 922-927, § 4; cf. People v Caserta, 19 NY2d 18; People v Ochs, 9 AD2d 792). In Caserta, where it was held error to receive a witness's testimony as to his prior identification of the defendant from photographs, the court observed (p 21) that "where the identification is from photographs in the rogues' gallery (even though the name or number on the picture has been exscinded) the inference to the jury is obvious that the person has been in trouble with the law before."

A case quite analogous to the present one is Barnes v United States (365 F2d 509). There it was held reversible

error, where defendant did not testify, to introduce typical front-and-profile "mug shots" with tape covering prison numbers on the photos and a piece of paper over the back to cover written material. The court stated (pp 510-511): "The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. The rudimentary tape cover placed over the prison numbers on the photograph, and over the notations on the reverse side, neither disguised the nature of the picture nor avoided the prejudice. If anything, by emphasizing that something was being hidden, the steps taken here to disguise the nature of the picture may well have heightened the importance of the picture and the prejudice in the minds of the jury."

The conviction was reversed upon a finding of "substantial probability" that the photos "impressed upon the jury the fact of appellant's prior criminal record" (p 512). To like effect is *Vaughn v State* (215 Ind 142).

The People urge (citing *Cupo v United States*, 359 F2d 990, 994) that appellant suffered no prejudice because the date on the fingerprint card was three days later than the date of the subject offense, so that the jury would likely infer that he was fingerprinted and photographed upon arrest for that offense. We note in passing that somewhat similar arguments were rejected in *Blue v State* (250 Ind 249) and *State v Cumbo* (9 Ariz App 253).

The precautions that surrounded the use of the fingerprint card failed to protect this defendant adequately against the prejudicial jury inference that he had a criminal history. In addition to any "automatic" prejudicial impact such an exhibit may have (see *Barnes v United States*, 365 F2d 509, 510-511, *supra; Blue v State*, 250 Ind 249, 255, *supra)*, there was police testimony here which could readily be understood to mean that defendant had been previously arrested. Even assuming that the jurors did believe that the photos and prints were taken in connection with the crime on trial, we think that the covering of part of the back of the card (which at its top bears the uncovered caption, "Arrest Record") could hardly fail to provoke the conclusion that what was covered up was a litany of crimes.

Nor can we conclude that the error was harmless. From the

nature of a written question which the jury transmitted to the court after retiring to deliberate, it appears that they initially had reservations about the sufficiency of the fingerprint evidence, which was the only evidence linking appellant to the crime. Thus we cannot say that there was not a "significant probability" *(People v Crimmins,* 36 NY2d 230, 242) that the prejudicial impact of the challenged exhibit tipped the scales against the defendant.

We agree with appellant's view, urged at trial and again upon appeal, that the proper procedure would have been to refingerprint defendant for purposes of the trial (cf CPL 160.10), thereby avoiding the use of the partly-redacted card. We note that recent decisions are unanimous to the effect that compelling a person accused of crime to submit to fingerprinting entails no violation of the privilege against self incrimination (see later case supplement to Fingerprints, palm prints, or barefoot prints as evidence, Ann 28 ALR2d 1115, 1137, § 14). Cf. *Schmerber v California* (384 US 757, 761 [privilege against self incrimination is not violated by compulsory taking of blood sample, because evidence obtained is not "of a testimonial or communicative nature"]); *United States v Dionisio* (410 US 1 [compelling witness to make voice exemplar for grand jury not violative of Fourth or Fifth Amendment]); *United States v Mara* (410 US 19 [compulsory taking of handwriting specimen for Grand Jury use did not violate Fourth Amendment]); *People v Goldberg* (19 NY2d 460, 466 ["Handwriting specimens, like fingerprints, are physical evidence"]).

The judgment should be reversed and a new trial granted.

MARSH, P.J., CARDAMONE, SIMONS and MAHONEY, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted.