Majuan **BOATRIGHT**, Appellant
(Defendant below),

v.

**STATE of Indiana**, Appellee
(Plaintiff below).

No. 49S00–0007–CR–423.

Supreme Court of Indiana.

Dec. 20, 2001.

Jan B. Berg, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Majuan Boatright was convicted on multiple counts and sentenced to 100 years for the sexual assault and robbery of a motel clerk. We find the overwhelming evidence of his guilt renders any error in the admission of evidence of his prior criminal history harmless. We also find the facts supporting different counts sufficiently distinct to reject his claim of double jeopardy. And given his criminal history, the sentence imposed is not manifestly unreasonable.

*Background*

The facts most favorable to the judgment indicate that on September 5, 1998, at approximately 2:15 a.m., Defendant entered the Budgetel Inn. A woman was working at the front desk at the time. Defendant pulled out a gun and jumped over a counter. He forced the woman to the back office at gunpoint and took the money out of the money drawer. He then demanded to know where the videotape recording of the front desk was kept, but she lied, insisting that there was no tape. Defendant then forced her to the front desk and instructed her to pull down the video camera. After she pulled down the camera, Defendant ordered her to tear down the monitor, which she was unable to do.

Defendant then ordered the woman into the back office again. While holding her at gunpoint, he unzipped his pants and required her to perform oral sex. Defen- dant then forced her to lower her pants and underwear. He then tried, unsuccessfully, to penetrate her anally. After telling the woman to put her clothes on, he demanded her purse and took all of her money. He then asked whether she could open the safe. When she told him she couldn't, he had her unplug the phone and lay down by the safe. Defendant then fled from the Budgetel.

Defendant was convicted of two counts of Criminal Deviate Conduct, Class A felonies,[1] Robbery, a class B felony,[2] and Confinement, a class B felony.[3] He also pled guilty to being a habitual offender.[4] The trial court sentenced defendant to an aggregate term of 100 years: 50 years for count I, criminal deviate conduct, enhanced by 30 years for being a habitual offender; 50 years for the other criminal deviate conduct count to be served concurrently with the first count; 20 years for count III, robbery, to be served consecutively with count I; and 20 years for count IV, confinement, to be served concurrently with the first three counts.

*Discussion*

I

Defendant contends that the trial court committed reversible error in two respects, the first in response to a juror question, and the other by admitting a photo array. Defendant argues that these errors unduly emphasized Defendant's criminal history to the jury. (Appellant's Br. at 12.)

A

Toward the end of the trial and following the testimony of Detective Cahill who identified fingerprints found at the scene

---

1. Ind.Code § 35–42–4–2 (1998).

2. *Id.* § 35–42–5–1.

3. *Id.* § 35–42–3–3.

4. *Id.* § 35–50–2–8.

as belonging to Defendant, a juror asked the trial court if she could ask a question. The trial court instructed the juror to put the question in writing. The question, submitted by the juror, read:

Were the defendant's fingerprints only compared to the latent prints found at the scene just today, just before the witness testified. (He said he'd pulled the prints 15 minutes earlier.) I guess I'm asking if they had been previously compared at a lab and that is how the defendant was charged.

(R. at 144.)

The trial court responded that the State still had additional witnesses to testify and that they may be able to answer the question. The court indicated that the parties had been made aware of her concern and suggested that she wait and see if another witness addresses the issue.

Defendant then sought to prevent testimony that Detective Cahill filed charges against the Defendant after finding that his fingerprints matched those at the scene. Defendant wanted to exclude any evidence that would suggest to the jury that he had been arrested prior to the arrest for the present crime.

Outside the presence of the jury, the trial judge expressed the view that the juror was entitled to an answer. The trial court said it was concerned that "the juror [would be] left with a false impression. That until [the morning of the trial], [Defendant] was never identified as having left those prints."

The Defendant and the State eventually agreed that Detective Cahill could testify that he had received identification information from another officer and arrested Defendant in response.

During Detective Cahill's testimony, and prior to any mention of the fingerprints, Detective Cahill had identified a photo array he had put together following the robbery that contained a mug shot of Defendant. Detective Cahill testified that the victim could not make an identification from the photo array. Defendant objected to the introduction of the photo array, arguing that it was not relevant given that the victim was not able to identify Defendant. Overruling the objection, the trial court allowed the introduction of the photo array. The trial court reasoned, "The detective testified that in September of [1998] the photograph that has been identified as the defendant resembled his appearance on that date.... I have not seen it so I don't know if there's a difference in that photograph ... but that's for the jurors to review and conclude." (*Id.*)

Directly after the photo array evidence, the State inquired about the fingerprint evidence. Detective Cahill testified that he had received information identifying the fingerprints found at the scene and he arrested Defendant based on the fingerprint information. Just prior to excusing Detective Cahill from the stand, the trial court inquired as to whether the juror's question had been sufficiently answered. The juror responded that it had.

Defendant objected to the trial court's question, arguing that the trial court's question highlighted the testimony of Detective Cahill. Defendant now argues on appeal that the combination of the photo array and the testimony regarding fingerprints prejudiced Defendant because it indicated to the jury that Defendant had a criminal history. (Appellant's Br. at 15.) Defendant concedes that he did not object to the introduction of the fingerprint evidence.[5] He also concedes that the admis-

---

**5.** Defendant did object to the trial court's statement that the juror was entitled to an answer.

sion of a photo array containing mug shots is not *per se* inadmissible. Nevertheless, Defendant argues that the combination of the fingerprint evidence and the photo array were so prejudicial as to require reversal of his convictions.

### B

■■■ Generally, evidence of a defendant's prior criminal history is highly prejudicial and is not admissible. *See James v. State*, 613 N.E.2d 15, 22 (Ind.1993) (citing *Roche v. State*, 596 N.E.2d 896, 901 (Ind.1992)). The admission of a photo array or fingerprint evidence can lead jurors to conclude that a defendant has previously been arrested. However, we have previously held that "[m]ug shots are not per se inadmissible [and] are admissible if (1) they are not unduly prejudicial and (2) they have substantial independent probative value." *Wisehart v. State*, 693 N.E.2d 23, 47 (Ind.1998); *Graves v. State*, 496 N.E.2d 383, 386 (Ind.1986). Fingerprint evidence has also been found to be prejudicial in some circumstances. The New York Court of Appeals found it was error to admit a fingerprint card on which, al-though defendant's arrest record had been blocked out, the uncovered caption "arrest record" appeared. *People v. Balone*, 52 A.D.2d 216, 217, 383 N.Y.S.2d 726 (1976).

■■■ Here, the cumulative effect of the photographs and fingerprints may have suggested to the jury that Defendant had a prior criminal history. Defendant, however, failed to object to the admission of the fingerprint evidence and we will therefore only reverse if we find fundamental error. The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *See Carter v. State*, 738 N.E.2d 665, 677 (Ind.2000) (citing *Charlton v. State*, 702 N.E.2d 1045, 1051 (Ind.1998)).

■■■ Given the evidence of Defendant's guilt here, however, we find no reversible error. "Where the jury's verdict is supported by independent evidence of guilt such that upon review we are satisfied that there was no substantial likelihood that the evidence in question played a part in appellant's conviction, any error in its admission is harmless." *Roche*, 596 N.E.2d at 901. Here, Defendant was videotaped as he held up the victim. His fingerprints were also found on the front desk and the registration card that the victim handed to him. We find no fundamental error and, in light of the overwhelming evidence of Defendant's guilt, we find that any error was harmless.

### II

Defendant next contends that his convictions should be set aside because the prosecutor improperly referred to Defendant's exercise of his constitutional right to remain silent.

During the closing argument, the prosecutor made the following statement to the jury:

Thank you, Judge. [The defense attorney] spent most of his closing argument telling you that you should not believe [the victim]. Telling you that you could disregard her testimony—that she wasn't to be believed. Just said it—just, flat out made a statement but he didn't give you any reason to disbelieve her because there is none. She has absolutely no motive to lie about any of the events that happened to her—absolutely none. You'll recall the [trial court's] preliminary instructions. He told you, you should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony, you must determine which of the witnesses you will

believe and which you will disbelieve. There has been absolutely no conflicting testimony in this trial. The only testimony and the only evidence that you have heard in this trial is that [the victim] was robbed, confined and sexually assaulted in two different manners.

(R. at 16).

■ "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Moore v. State,* 669 N.E.2d 733, 739 (Ind.1996). Article I, section 14, of the Indiana Constitution also protects a defendant's right to remain silent at trial. *See id.* at 739 n. 14. If in its totality, however, the prosecutor's comment is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal. *See Hopkins v. State,* 582 N.E.2d 345, 348 (Ind.1991) (citing *Hill v. State,* 517 N.E.2d 784, 788 (Ind.1988)).

■ Defendant never objected to the prosecutor's comments. Generally, failure to object at trial results in waiver of an issue for appeal. *See Isaacs v. State,* 673 N.E.2d 757, 763 (Ind.1996). When a prosecutor's conduct subjects a defendant to grave peril and has a probable persuasive effect on the jury's decision, it may amount to fundamental error. *See id.* That is what Defendant claims here.

■ We do not find any error. The prosecutor's comment did not focus on, or even mention, Defendant's decision not to testify. The comment was in response to Defendant's closing argument suggesting that the jury should not believe the victim. The State invoked the language given in the instruction regarding conflicting testimony and pointed out that the testimony in this case was not contradictory. *See*

*Hopkins,* 582 N.E.2d at 348 ("Arguments which focus on the uncontradicted nature of the State's case do not violate the defendant's right not to testify."); *see also Callahan v. State,* 527 N.E.2d 1133, 1136–37 (Ind.1988) (holding that the remark, "Let's see, has there been any witnesses presented who have told us where [Defendant] was that morning?" did not focus on Defendant's failure to testify and thus was not improper.)

### III

Defendant contends that his conviction for confinement violates the Indiana Constitutional prohibition against double jeopardy. (Appellant's Br. at 10.)

The victim testified that Defendant jumped over the front desk of the hotel and asked her where the money was. She told him it was in the back office. He forced her into the back office and instructed her to give him the money. The information indicates that Defendant was charged with confinement for "removing [the victim]" from "the registration desk of the Budgetel Motel, to the back office of the Budgetel Motel." He was charged with robbery for taking from her, "U.S. Currency, by putting [the victim] in fear or by using or threatening the use of force..."

■ "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State,* 717 N.E.2d 32, 49 (Ind.1999).

Defendant contends that the robbery and confinement constitute the same act and therefore one of the convictions must be overturned. We find that Defendant committed separate criminal transgressions for which he could be convicted of confinement and robbery. Defendant

forced the victim to the back office; forced her to hand over money; sexually assaulted her; then robbed her again (taking money out of her purse).

■ Forcing the victim to the back office while instructing her to hand over money arguably constitutes one criminal transgression for the purposes of Indiana's double jeopardy rule. Defendant argues that it does. Given Defendant's other acts, however, we do not need to reach that issue. To succeed in his claim of double jeopardy under the *Richardson* actual evidence test, Defendant must demonstrate a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both Robbery and Confinement. *See Richardson,* 717 N.E.2d at 53. But *Richardson* requires that the possibility be reasonable, not speculative or remote. *Griffin v. State,* 717 N.E.2d 73, 89 (Ind.1999). Given the clear evidence of a second, separate robbery, we find that Defendant has failed to demonstrate a *reasonable* possibility that the jury found him guilty of two offenses based on the same evidentiary facts. After assaulting the victim, Defendant committed a second act of robbery when he took money from her purse. This act occurred after the two acts of assault, after the initial robbery, and after Defendant confined the victim by forcing her to the back room. Therefore, the robbery conviction and the confinement conviction are supported by two clearly separate acts. The confinement arises from the act of forcing the victim to the back office, while the robbery conviction arises from the distinct transgression of taking money from her purse.

## IV

Defendant makes a brief argument that his sentence of 100 years imprisonment is manifestly unreasonable and an abuse of the trial court's discretion in light of the nature of the offense and Defendant's character. (Appellant's Br. at 18–19.)

■ The trial court has discretion to determine the appropriate sentence, and it may be reversed only for a manifest abuse of that discretion. Ind. Appellate Rule 17(B); *Ford v. State,* 704 N.E.2d 457, 461 (Ind.1998).

The presumptive sentence for a class A felony is 30 years. *See* Ind.Code § 35–50–2–4 (1998). Up to 20 years may be added for aggravating circumstances and up to ten years may be subtracted for mitigating circumstances. *See id.* The presumptive sentence for a class B felony is 10 years, with not more than 10 years added for aggravating circumstances and not more than four years may be subtracted for mitigating circumstances. *See Id.* § 35–50–2–5. If a defendant is found to be a habitual offender, the trial court "shall sentence [him or her] ... to an additional fixed term that is not less than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years." *Id.* § 35–50–2–8(e).

■ Defendant's total executed sentence is 100 years. The first component of that sentence is a fully enhanced sentence of 50 years for criminal deviate conduct. This enhancement was supported by the aggravating circumstance of Defendant's significant history of violent crime. Defendant's pre-sentence report indicates that Defendant had a juvenile history that included true findings of fleeing, battery, two counts of violating probation, violation of home detention, conversion, escape, and carrying a handgun. As an adult, Defendant had previously been convicted of conversion, four unrelated counts of resisting

law enforcement, two unrelated charges of auto theft, possession of cocaine, two unrelated counts of driving while license suspended, robbery, and carrying a handgun without a license.

The second component of the sentence is a 30–year habitual offender enhancement. Defendant makes no claim that it was improperly imposed.

The third component of the sentence is a fully enhanced sentence of 20 years for robbery, to be served consecutive to the 80 years just described. While the trial court could have been more explicit in explaining its reasoning for fully enhancing the sentence on this count and ordering it to be served consecutively, we find its reasons— Defendant's prior criminal history and the fact that the robbery was a separate offense from the sexual assault—sufficient to conclude that the sentence is not manifestly unreasonable.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.