**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 10 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

EDWARD CECIL, JR.,                    )
                                      )
    Appellant-Defendant,        )
                                      )
      vs.                    )   No. 22A04-1112-CR-689
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.         )

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Maria D. Granger, Judge
Cause No. 22D03-0905-FB-1217

**October 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Edward Cecil, Jr., appeals his conviction for class B felony dealing in cocaine or a narcotic drug,[1] arguing that the prosecutor improperly commented on his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. Finding no infringement of Cecil's Fifth Amendment right, we affirm.

**Facts and Procedural History**

The New Albany police had used Chris Chalker as a confidential informant in controlled drug buys several times. On May 19, 2009, Chalker called the police and informed them that a man referred to on the street as "Black" was selling cocaine. Tr. at 60. Chalker called Black from the New Albany Police Station and agreed to buy $100 in crack cocaine in the Dairy Queen parking lot. The police searched Chalker to confirm that he had no drugs, gave him five twenty-dollar bills, and set up surveillance around the Dairy Queen.

Shortly thereafter, Cecil drove a Chevy Monte Carlo through the Dairy Queen drive-thru with Tyreece Morris in the passenger seat. Cecil then pulled up next to Chalker, who was standing at a payphone in the parking lot. Chalker walked up to the passenger window. Chalker recognized Cecil as Black, but he did not know the passenger. Cecil gave Morris the crack, and Morris gave it to Chalker. Chalker handed Morris the $100. Chalker walked away and brought the crack to the police.

The police pulled the Chevy over, identified the driver of the car as Cecil, and arrested him and Morris. Special Agent Jeffrey McKinley questioned Cecil about the drug buy. Cecil

---

[1] Ind. Code § 35-48-4-1(a)(1).

2

said that he had been contacted to sell $100 worth of crack but believed that it was a setup and decided not to go through with the transaction. Agent McKinley searched Cecil and found the cell phone that Chalker had called to set up the buy. Agent McKinley also found about $1200 on Cecil and in the Chevy, but none of the serial numbers on the bills matched those the police had given Chalker for the buy. Later, at the police station, the police found the twenty-dollar bills that had been given to Chalker and additional crack cocaine in Morris's rectum.

The State charged Cecil with class B felony dealing in cocaine or a narcotic drug. At trial, Morris testified that his street name was "Black," that Chalker called him, not Cecil, and that after he talked to Chalker he gave his phone to Cecil. *Id*. at 179. Morris also testified that Cecil gave him a ride to the Dairy Queen and had no knowledge of the drug deal. The jury found Cecil guilty as charged. Cecil appeals.

**Discussion and Decision**

Cecil argues that during closing argument, the prosecutor violated his right against self-incrimination by indirectly commenting on his failure to testify, thereby committing misconduct that resulted in fundamental error. Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). Cecil concedes that he did not object to the prosecutor's comment and therefore did not properly preserve his claim.

3

To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error. *Id*. In reviewing a claim of prosecutorial misconduct, we "determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002) (citation and quotation marks omitted). "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper*, 854 N.E.2d at 835. "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*.

Fundamental error is an "extremely narrow exception" to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. *Id*. For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." *Booher*, 773 N.E.2d at 817 (citation, quotation marks, and brackets omitted). "The element of harm is not shown by the fact that a defendant was ultimately convicted." *Davis v. State*, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005), *trans. denied* (2006). "Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural

4

opportunities for the ascertainment of truth to which he would have been entitled." *Id.* at 1107-08.

During closing argument, defense counsel stated, "The fact is, Mr. Morris told you what happened. He acted alone. He asked Mr. Cecil for a ride, Mr. Cecil didn't know what the ride was for, what Mr. Morris' intentions were. And that settles it, ladies and gentlemen of the jury." Tr. at 248. On rebuttal, the prosecutor stated,

> Now, we're expected to believe that he [Cecil] was just driving. You can use your common sense in that if he was just driving with his friend here to New Albany, Indiana, for no other particular reason, and no idea what his friend Mr. Morris was (indiscernible) to do. *But all the evidence that we have is at the opposite of that*. That Mr. Chalker testified he knows who Mr. Black is, and identified him in Court and Mr. Black is none other than Mr. Cecil, who he set up this drug deal with.

*Id*. at 250 (emphasis added). Cecil argues that the highlighted sentence is an indirect comment on Cecil's failure to testify in violation of the Fifth Amendment to the United States Constitution.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment is violated when "the prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind. 2001). "However, statements by the prosecutor concerning the uncontradicted nature of the State's evidence do not violate the defendant's Fifth Amendment rights." *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004). Further, if the prosecutor's comment "in its totality" is addressed to other evidence rather than the

5

defendant's decision not to testify, it is not grounds for reversal. *Boatright*, 759 N.E.2d at 1043. "The defendant bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent." *Owens v. State*, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010), *trans. denied* (2011).

Cecil asserts that the prosecutor's statement here is like that in *Reynolds v. State*, 797 N.E.2d 864 (Ind. Ct. App. 2003), and *Herron v. State*, 801 N.E.2d 761 (Ind. Ct. App. 2004), in which we concluded that the prosecutor had violated the defendant's Fifth Amendment right. We disagree. In *Reynolds*, the prosecutor made the following comment:

> Was [sic] Aaron and Rachel [the State's witnesses] both lying? He [the defendant] takes the 5th Amendment. You take the 5th Amendment when you got something to be concerned about. Incriminating yourself. 5th Amendment. My constitutional right not to incriminate myself. That's what that means. So in order for that to apply you have to have done something to incriminate yourself.

797 N.E.2d at 868 (citation omitted). In *Reynolds*, the prosecutor made a direct comment on the defendant's decision to exercise his Fifth Amendment right. The prosecutor's comment in *Reynolds* is nothing like the prosecutor's comment here.

We find the same to be true of the prosecutor's comment in *Herron*. There, the prosecutor stated, "but as for not presenting the gun to you, that actually fired those bullets, members of the jury, right over there at that table, that's the only one [the defendant] in the courtroom that can certainly tell us where that gun is." *Herron*, 801 N.E.2d at 765. Thus, the prosecutor's comment directly singled out the defendant as having information that he did not tell the jury and could be reasonably "interpreted to suggest that it was Herron's invocation of his Fifth Amendment privilege against compulsory self-incrimination that

6

prevented the State from producing the nine-millimeter handgun that shot [the victim]." *Id.* at 766.

In fact, we think that the prosecutor's statement in this case is even less problematic than others that Indiana courts have reviewed. For example, in *Dumas*, 803 N.E.2d 1113, the prosecutor made the following remark:

> [T]here is no evidence whatsoever that Irving's [the defendant's accomplice] boyfriend was involved in this. But put that aside. How and why would [Irving] name [Dumas] if he wasn't involved? What motive does she have to lie? Was any motive that she had against Mr. Dumas presented in this court?

*Id.* at 1117. The supreme court concluded that the prosecutor's remarks "were well within the permissible range of fair commentary on the evidence or lack thereof and were not a comment on Dumas' right not to testify." *Id.* at 1118. *See also Hopkins v. State*, 582 N.E.2d 345, 347 (Ind. 1991) (concluding that remark "it is certainly worthy of comment that you never heard any testimony during this trial that the defendant was anywhere else" other than the victim's home when he was murdered was not focused on absence of testimony from defendant and thus did not impinge on right to remain silent); *Callahan v. State*, 527 N.E.2d 1133, 1136-37 (Ind. 1988) (concluding that the remark, "Let's see, has there been any witnesses presented who have told us where [defendant] was that morning?" was not focused on defendant's failure to testify and thus was not improper).

Here, the prosecutor's comment did not even focus on the absence of evidence but rather emphasized the evidence that the State presented. Specifically, the prosecutor pointed out "[t]hat Mr. Chalker testified he knows who Mr. Black is, and identified him in Court and Mr. Black is none other than Mr. Cecil, who he set up this drug deal with." Tr. at 250. Thus,

7

the prosecutor's comment is addressed to evidence that was presented, not the defendant's decision to remain silent. *See Boatright*, 759 N.E.2d at 1043. Cecil fails to carry his burden of persuading us that the prosecutor's comment "is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from [his] silence." *See id.* Accordingly, we conclude that the prosecutor's statement did not violate the Fifth Amendment. Finding no prosecutorial misconduct, we affirm Cecil's conviction.

Affirmed.

RILEY, J., and BAILEY, J., concur.