## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 14 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carlvion Dupree Gates,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 14, 2018

Court of Appeals Case No.
79A02-1703-CR-593

Appeal from the Tippecanoe
Superior Court.
The Honorable Randy J. Williams,
Judge.
Trial Court Cause No.
79D01-1510-F3-15

**Friedlander, Senior Judge**

[1] Carlvion Dupree Gates appeals his convictions of one count of robbery, a Level 5 felony;[1] one count of possession of a narcotic drug (Oxycodone) as a Level 3 felony;[2] two counts of possession of a narcotic drug (Nucynta and Morphine, respectively) as Level 4 felonies; one count of possession of a narcotic drug (Oxymorphone) as a Level 5 felony; two counts of possession of a narcotic drug (Fentanyl and Methadone, respectively) as Level 6 felonies; and resisting law enforcement by means of a vehicle, a Level 6 felony.[3] We affirm.

[2] In the early morning hours of September 9, 2015, Gates drove Meggan Parker and Ashley West from Indianapolis to West Lafayette, Indiana. Ashley's ex-boyfriend, Jared Cunningham, traveled to West Lafayette at the same time but in a separate vehicle with another man who is not identified in the record. The group had discussed robbing a pharmacy in West Lafayette.

[3] Cunningham entered the pharmacy while the others waited outside. He approached the pharmacy desk and ordered an employee to give him Oxycodone pills. Cunningham next went behind the desk and ordered the pharmacist, Kathy Smith, to open the safe where controlled substances were stored. She complied, and he instructed her to help him empty the contents of the safe, which included many bottles of different medications, into a large

---

[1] Ind. Code § 35-42-5-1 (2014).

[2] Ind. Code § 35-48-4-6 (2014).

[3] Ind. Code § 35-44.1-3-1 (2014).

trash bag. Cunningham also placed several boxes of syringes in the bag before fleeing the store.

[4] Next, Cunningham approached Gates' car. Gates took the bag of stolen medications from Cunningham and put it in the trunk. Cunningham left with the unidentified man. Meanwhile, Gates, Parker, and West also left West Lafayette, driving toward Indianapolis. The police located them on an interstate highway and tried to stop them, but Gates fled. A high-speed chase ensued, during which Gates drove as fast as ninety miles an hour while weaving through traffic. West repeatedly asked Gates to stop, but he refused.

[5] During the chase, Parker retrieved the bag of stolen medications from the trunk through a hatch behind the back seat. She opened some of the bottles and looked inside, indicating that the pharmacy may have hidden a tracking device in one of them. Parker and West also consumed Methadone, which was among the medications Cunningham had stolen.

[6] Eventually, officers used stop sticks to disable the tires on Gates' car and end the chase. The officers arrested Gates, Parker, and West, and impounded the car. During a subsequent search of the car, officers found a variety of controlled substances in the trunk and in the glove box. The officers determined those items came from the pharmacy, which later reported that the stolen controlled substances were valued at $32,325. Cunningham was apprehended several weeks later.

[7] The State charged Gates with the offenses set forth above, plus conspiracy to commit robbery and possession of paraphernalia. Gates was tried by jury, and West testified for the State. The jury convicted Gates of all charges except conspiracy to commit robbery and possession of paraphernalia. The trial court imposed a sentence, and this appeal followed.

[8] Gates raises three issues, which we consolidate and restate as:

1. Whether the prosecutor engaged in misconduct that amounted to fundamental error while presenting closing arguments.

2. Whether Gates' multiple convictions for possession of a narcotic drug violate his Indiana constitutional protection against double jeopardy.

# 1. Closing Arguments

[9] Gates argues the prosecutor engaged in misconduct during closing arguments by: (1) commenting on Gates' choice not to testify; (2) commenting on Gates' choice not to present any evidence; and (3) vouching for his own credibility and for West.

[10] We evaluate a properly preserved claim of prosecutorial misconduct using a two-step analysis, considering (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under the circumstances, placed the defendant in a position of grave peril to which he or she otherwise would not have been subjected. *Cooper v. State*, 854 N.E.2d 831 (Ind. 2006). A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. *Ryan v. State*, 9 N.E.3d

663 (Ind. 2016). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Cooper*, 854 N.E.2d 831. One relevant factor is whether the alleged misconduct was repeated such that it appears that the prosecutor engaged in a deliberate attempt to improperly prejudice the defendant. *Watkins v. State*, 766 N.E.2d 18 (Ind. Ct. App. 2002), *trans. denied*.

[11] To preserve a claim of prosecutorial misconduct, the defendant must request an admonishment of the jury at the time the misconduct occurs, and if further relief is desired, move for a mistrial. *Ryan*, 9 N.E.3d 663. Gates did not request an admonishment or mistrial at any point during the prosecutor's closing arguments, and as a result he has procedurally defaulted his claims.

[12] A defendant may present procedurally defaulted claims of prosecutorial misconduct on appeal, but in that circumstance the defendant must establish not only that misconduct occurred but also that the misconduct amounted to fundamental error. *Id.* The doctrine of fundamental error is an extremely narrow exception to the waiver rule. *Id.* Error is fundamental when it represents a "blatant violation of basic principles." *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002). Stated differently, a fundamental error is error that is so prejudicial to the defendant's due process rights as to make a fair trial impossible. *Id.*

[13] The doctrine of fundamental error is meant to permit appellate courts a means to correct the "most egregious and blatant trial errors that otherwise would have

been procedurally barred," not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error. *Ryan*, 9 N.E.3d at 668. Our task here is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury-including evidence admitted at trial, closing argument, and jury instructions-to determine whether the alleged misconduct had such an unfairly prejudicial effect on the jury's decision that a fair trial was impossible. *Id.*

[14] We start with Gates' claim that the prosecutor improperly commented on his choice not to testify. The Fifth Amendment to the United State Constitution and article 1, section 14 of the Indiana Constitution protect a defendant's right to remain silent at trial. *Boatright v. State*, 759 N.E.2d 1038 (Ind. 2001). A prosecutor may not make a statement that the jury may reasonably interpret as an invitation to draw an adverse inference from the defendant's silence. *Id.* (quotation omitted). If the prosecutor's comment is addressed in its totality to other evidence rather than the defendant's failure to testify, the comment is not grounds for reversal. *Id.*

[15] During Gates' closing argument, he noted that Cunningham did not testify and argued the prosecutor "was going to show us all this stuff [Cunningham] was going to say; you heard the list of witnesses, where were they?" Tr. Vol. 2, p. 176. Gates later asked the jury to consider "Where was Cunningham? Where's the star witness?" *Id.* at 177. During the State's rebuttal argument, the following exchange occurred:

[Prosecutor]: Another mis-direct [sic] where is Jared Cunningham. Here's the thing folks, I don't want a witness. Mr. McCoy has every right to call the defendant as I do. And you heard from Detective Townsend's testimony, how would you describe your dealings with Mr. Cunningham? Not cooperative and hostile. There you go. So, Mr. McCoy where is Jared Cunningham?

[Gates]: Objection Judge.

[The Court]: Sustained.

[Prosecutor]: It's a mis-direct [sic]. Why do I need to bring in the guy that robbed the place when that's not an issue in this case?

*Id.* at 188.

[16] The prosecutor apparently misspoke, referring to "the defendant" during a discussion of Cunningham's testimony. We cannot conclude this isolated reference amounted to misconduct, let alone fundamental error. Gates had raised the absence of Cunningham's testimony, and the prosecutor's comments in their totality were addressed to Cunningham's absence rather than Gates' choice not to testify. The misstatement did not amount to misconduct and was not so prejudicial as to render a fair trial impossible.

[17] Gates further argues the State improperly attempted to shift the burden of proof to him by telling the jury that he did not call Cunningham to testify. We disagree. Prosecutors are permitted to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Dumas v. State*, 803 N.E.2d 1113 (Ind. 2004). Gates repeatedly pointed out to the jury during his closing argument that Cunningham had not

testified and argued that his absence showed weakness in the State's case. The prosecutor was entitled to remind the jury on rebuttal that a police officer had determined Cunningham was hostile and uncooperative. Further, the trial court instructed the jury that during preliminary and closing instructions that Gates was "not required to present any evidence to prove his innocence or to prove or explain anything." Appellant's App. Vol. II, pp. 79, 102. Any harm by the prosecutor's comments did not rise to the level of fundamental error. *See Chubb v. State*, 640 N.E.2d 44 (Ind. 1994) (prosecutor's comment on defendant's failure to call witnesses was de minimus impropriety, at best, and was cured by jury instructions).

[18] Next, Gates claims the prosecutor engaged in misconduct by vouching for his own credibility and by vouching for State's witness Ashley West. Prosecutors must avoid describing themselves to the jury as having higher ethical responsibilities than defense counsel, because "such comments might improperly sway a jury in favor of conviction." *Coy v. State*, 720 N.E.2d 370, 373 (Ind. 1999). In addition, a prosecutor may not personally vouch for a witness. *Ryan*, 9 N.E.3d 663. Instead, he or she may comment on a witness's credibility if the comments are based on reasons that arise from the evidence. *Id.* (quotation omitted).

[19] During Gates' closing argument, he implied the State prosecuted him with dishonorable motives, characterizing the State's case as "a shell game" and claiming the State pursued a case against him despite "a lack of evidence" "just because [the prosecutor and police] want him convicted." Tr. Vol. 2, pp. 183-

84.  Gates further attacked West's credibility, accusing her of changing her story and testifying pursuant to a plea agreement to a "version of the story" the police wanted her to tell.  *Id.* at 181.

[20]  On rebuttal, the prosecutor presented the following argument as to the State's motives and West's truthfulness:

> Now, [West] literally has no reason to lie.  She is serving her time.  For someone that didn't go actually into the CVS and someone who wasn't driving the car, she got hit pretty hard.  This is not - how is this a self-serving statement?  She pled guilty …
>
> * * * *
>
> Self serving statement.  That's not a self serving statement, she's in the DOC.  She got hit hard.  There is no reason to doubt her credibility.  Not to mention her phone, the lack of evidence on it coooberates [sic] what she said.  All the places they stopped coooberates [sic] with what she says.  It just makes sense.  And here's the thing he wants to say that we got what we wanted here, that's not my job.  My job is very different from [defense counsel's], my job is [to] search the truth.  If I think someone is not guilty of a crime, I can't charge 'em, I have to dismiss it based upon the evidence.  I didn't ask Ashley to give up Carlvion Gates, her plea agreement said tell the truth and that's what she did.  Ladies and gentlemen I'd love to get, you know, go a little further with this, but I think you get the picture.  I think we've picked this apart pretty well.  Look at the facts and don't listen to the bluster.  Look at the facts and find Carlvion Gates guilty as charged in all counts.  Thank you.

*Id.* at 193-94.

[21]  The prosecutor made these remarks in rebuttal to Gates' attacks on the State's motive for prosecuting him and on West's credibility.  The prosecutor did not

denigrate Gates' attorney but rather explained that he can pursue only those cases that are supported by the evidence. In addition, the prosecutor's comments on West's credibility were based on the evidence. He encouraged the jury to conclude she was being truthful based on the evidence, not merely on the prosecutor's opinion. Even if the prosecutor's statements as to credibility were inappropriate, none of them rose to the level of fundamental error. *See Brown v. State*, 746 N.E.2d 63 (Ind. Ct. App. 2001) (prosecutor did not engage in misconduct during closing argument; the prosecutor's remarks were made in response to the defendant's allegation of prosecutorial misconduct).

[22] Finally, Gates argues that even if each of the prosecutor's statements do not require reversal of the verdict, then all the statements, taken together, amount to fundamentally erroneous prosecutorial misconduct. We disagree. The statements that Gates challenges were raised on rebuttal, after Gates had questioned the State's motives in bringing the case, the absence of testimony by Cunningham, and West's credibility. In addition, the trial court's preliminary and final jury instructions informed the jury how to assess witness credibility and reminded the jury Gates was not obligated to present any evidence.

[23] Finally, the evidence against Gates was substantial. He did not dispute fleeing from the police, and large quantities of controlled substances were found in the glove box and trunk of the car he was driving. We conclude that the prosecutor's statements did not amount to misconduct and were not so unfairly prejudicial as to render a fair trial impossible. *See Ryan*, 9 N.E.3d 663

(defendant's claim of cumulative error in jury arguments was without merit; the jury instructions and evidence, taken as a whole, overcame the prosecutor's misconduct and there was no fundamental error).

## 2. Double Jeopardy

[24] The jury determined Gates was guilty of six counts of possession of a narcotic drug. He claims these convictions violate the Indiana Constitution's ban on double jeopardy because he only committed one act of possession. Gates does not raise a claim under the federal Double Jeopardy Clause.

[25] Article 1, section 14 of the Indiana Constitution provides, in relevant part, "No person shall be put in jeopardy twice for the same offense." Whether a conviction violates the prohibition against double jeopardy is an issue of statutory interpretation, which we review de novo. *Taylor v. State*, 929 N.E.2d 912 (Ind. Ct. App. 2010), *trans. denied*. The Indiana Supreme Court has explained that two or more convictions violate section 14 "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

[26] We start with the "statutory elements" test. *Id.* at 50. As our Supreme Court has explained:

> The objective of this test is to determine whether the essential elements of separate statutory crimes charged could be established hypothetically. In this test, the charged offenses are

identified by comparing the essential statutory elements of one charged offense with the essential statutory elements of the other charged offense. Inspecting the relevant statutes and the charging instrument to identify those elements which must be established to convict under the statute, this review considers the essential statutory elements to determine the identity of the offense charged, but does not evaluate the manner or means by which the offenses are alleged to have been committed, unless the manner or means comprise an essential element. Once the essential elements of each charged offense have been identified, the reviewing court must determine whether the elements of one of the challenged offenses could, hypothetically, be established by evidence that does not also establish the essential elements of the other charged offense.

*Id.* at 50 (footnotes omitted).

[27] The statute that defines the offense of possession of a narcotic drug provides:

(a) A person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) classified in schedule I or II, commits possession of cocaine or a narcotic drug, a Level 6 felony, except as provided in subsections (b) through (d).

(b) The offense is a Level 5 felony if:

(1) the amount of the drug involved is at least five (5) but less than ten (10) grams; or

(2) the amount of the drug involved is less than five (5) grams and an enhancing circumstance applies.

(c) The offense is a Level 4 felony if:

(1) the amount of the drug involved is at least ten (10) but less than twenty-eight (28) grams; or

(2) the amount of the drug involved is at least five (5) but less than ten (10) grams and an enhancing circumstance applies.

(d) The offense is a Level 3 felony if:

(1) the amount of the drug involved is at least twenty-eight (28) grams; or

(2) the amount of the drug involved is at least ten (10) but less than twenty-eight (28) grams and an enhancing circumstance applies.

Ind. Code § 35-48-4-6 (2014).

[28]    In the current case, all six of Gates' convictions for possession of a narcotic drug necessarily arise from the same statute.  When the statute is examined in conjunction with the charging information, the essential elements for each offense are different because the offenses, as charged, address possession of different narcotics in varying weights:

| Charge | Controlled Substance | Amount |
| --- | --- | --- |
| IV – Level 3 felony | Oxycodone | 28 or more grams |
| V – Level 4 felony | Tapentadol a/k/a Nucynta | at least 10 but less than 28 grams |
| VI – Level 4 felony | Morphine | at least 10 but less than 28 grams |
| VII – Level 5 felony[4] | Oxymorphone | at least 5 but less than 10 grams |

[4] The charging information listed this offense as a Level 4 felony, but the amount of narcotic alleged indicates that it was a Level 5 felony.  The trial court instructed the jury to consider the offense as a Level 5 felony and entered a judgment of conviction for this offense as a Level 5 felony.

| VIII – Level 6 felony | Fentanyl | not stated (pursuant to statute, must be less than 5 grams) |
| IX – Level 6 felony | Methadone | not stated (pursuant to statute, must be less than 5 grams) |

Appellant's App. Vol. II, pp. 28-39.

[29] Pursuant to the governing statute and the charging information, the essential elements of each of the offenses could not, hypothetically, be established by evidence that also establishes the essential elements of the other charged offenses. We conclude Gates' convictions for possession of a narcotic drug do not violate the statutory elements test.

[30] Next, we turn to the "same evidence" test. *Richardson*, 717 N.E.2d at 53. As our Supreme Court has explained:

> Even if the first consideration, the statutory elements test, does not disclose a double jeopardy violation, the actual evidence test may. Under this inquiry, the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the 'same offense' in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Id.*

[31]     Here, the State presented evidence to support each of the six counts of possession of a narcotic drug. Officer Aaron Thompson of the West Lafayette Police Department searched Gates' car at the police department, taking photos as he worked. The jury heard his testimony and saw his photographs. The photos show bottles of Oxycodone and Methadone, as well as Fentanyl patches, among many other bottles and loose pills in the trunk and the glove box. The jury also received Thompson's written report, in which he identified the bottles and boxes of controlled substances by their labels, including Fentanyl, Oxycodone, Morphine, and Methadone.

[32]     The State also presented to the jury a detailed theft report from the pharmacy, which listed the stolen controlled substances by name and amount, including Oxycodone, Nucynta, Morphine, Oxymorphone, Fentanyl, and Methadone. Finally, Forensic Drug Chemist Kristen B. Sturgeon from the Indiana State Police Lab testified about her examination of loose pills the police found in Gates' car. She identified one pill of Morphine, one pill of Oxycodone mixed with Acetaminophen, two pills of Oxycodone, and two pills of Methadone.

[33]     Thus, the State presented detailed evidence as to each of the controlled substances that supported each of the charges of possession of a controlled substance. The jury was instructed which controlled substance supported which charge. We conclude Gates has failed to show a reasonable possibility that the same facts used to support one offense could have been used to support other offenses. *See Walton v. State*, 81 N.E.3d 679 (Ind. Ct. App. 2017) (two convictions of possession of a firearm by a serious violent felon did not violate

the same evidence test; each conviction was based on a different firearm possessed by defendant); *cf. Bookwalter v. State*, 22 N.E.3d 735 (Ind. Ct. App. 2014) (convictions for dealing in narcotic drug and possession of narcotic drug violated same evidence test because the same quantity of the same drug (heroin) was cited to support both convictions), *trans. denied*.

[34] Gates cites three cases, *Duncan v. State*, 274 Ind. 457, 412 N.E.2d 770 (1980), *Martin v. State*, 176 Ind. App. 99, 374 N.E.2d 543 (1978), and *Bates v. State*, 178 Ind. App. 153, 381 N.E.2d 552 (1978), in support of his claim that possessing multiple types of controlled substances simultaneously must be considered as only one offense of possession of a controlled substance. We conclude those cases are distinguishable because they predate the Indiana Supreme Court's analysis set forth in *Richardson v. State*. Further, none of the three cases addresses Indiana's constitutional prohibition on double jeopardy.

[35] For the reasons stated above, we affirm the judgment of the trial court.

[36] Judgment affirmed.

Mathias, J., and Pyle, J., concur.